Valitutto v Staten Is. Univ. Hosp.

2026 NY Slip Op 03020

May 13, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Elena Valitutto, etc., et al., appellants,

v

Staten Island University Hospital, et al., respondents, et al., defendants.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on May 13, 2026

2022-00601, (Index No. 150762/17)

Lara J. Genovesi, J.P.

William G. Ford

Lourdes M. Ventura

Susan Quirk, JJ.

Wolf & Fuhrman LLP (Diamond and Diamond LLC, Brooklyn, NY [Stuart Diamond], of counsel), for appellants.

Rubin Paterniti Gonzalez Rizzo Kaufman LLP, New York, NY (Jonathan Waldauer and Juan C. Gonzalez of counsel), for respondents.

[*1]

DECISION & ORDER

In an action, inter alia, to recover damages for medical malpractice, the plaintiffs appeal from an order of the Supreme Court, Richmond County (Charles M. Troia, J.), dated January 19, 2022. The order granted the motion of the defendants Staten Island University Hospital and Rosemary Pitkin for summary judgment dismissing the complaint insofar as asserted against them.

ORDERED that the order is reversed, on the law, with costs, and the motion of the defendants Staten Island University Hospital and Rosemary Pitkin for summary judgment dismissing the complaint insofar as asserted against them is denied.

On November 25, 2016, Eric Valitutto presented to the emergency department of the defendant Staten Island University Hospital (hereinafter SIUH) complaining of numbness and pain in his right arm and leg, lower back pain, and a loss of sensation in his left leg. The defendant Rosemary Pitkin, the attending emergency room physician assigned to Valitutto's care, noted that Valitutto had had right leg numbness and weakness for three weeks, as well as lower back pain, numbness, and an abnormal gait. After ordering a head CT scan, Pitkin ruled out emergent brain conditions and other life-threatening conditions as the cause of Valitutto's symptoms and admitted him to SIUH under the care of his private physician. The next day, Valitutto was diagnosed with hyperreflexia and was prescribed a corticosteroid. On December 1, 2016, after Valitutto underwent additional testing, an MRI revealed that he had a herniated disc compressing his spinal cord at C5-C6. On December 12, 2016, a neurosurgeon performed decompression surgery on Valitutto's spine. A year later, Valitutto was diagnosed with avascular necrosis, death of bone, in both of his shoulders and both of his hips.

In April 2017, Valitutto commenced this action, inter alia, to recover damages for medical malpractice against SIUH and Pitkin (hereinafter together the defendants), among others. The Supreme Court subsequently substituted the plaintiffs, Valitutto's parents and co-guardians, as the plaintiffs in this action. The defendants moved for summary judgment dismissing the complaint insofar as asserted against them. In an order dated January 19, 2022, the court granted the defendants' motion. The plaintiffs appeal.

"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Elbagdadi v Silverman, 237 AD3d 904, 905 [internal quotation marks omitted]; see Stukas v Streiter, 83 AD3d 18, 23). "'In moving for summary judgment dismissing a cause of action alleging medical malpractice, a defendant must establish, prima facie, that there was no departure or deviation from the accepted standard of care or that such departure or deviation was not a proximate cause of any injury to the plaintiff'" (Weintroub v Maimonides Med. Ctr., 222 AD3d 915, 915-916, quoting Attia v Klebanov, 192 AD3d 650, 651; see Wijesinghe v Buena Vida Corp., 210 AD3d 824, 825). "If the defendant makes such a showing, the burden then shifts to the plaintiff to raise a triable issue of fact, but only as to those elements on which the defendant met its prima facie burden of proof" (Wiater v Lewis, 197 AD3d 782, 783; see Alvarez v Prospect Hosp., 68 NY2d 320, 324). "'Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions'" (Wiater v Lewis, 197 AD3d at 783, quoting Feinberg v Feit, 23 AD3d 517, 519; see Swiatocha v Koenigsdorf, 241 AD3d 1595). Expert opinions, in order not to be considered speculative or conclusory, should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record (see Autieri v Rosen, 241 AD3d 1228, 1229; Tsitrin v New York Community Hosp., 154 AD3d 994, 996).

Here, the defendants established their prima facie entitlement to judgment as a matter of law by submitting the affirmations of their expert physicians, who opined, based on their review of the medical records, the deposition testimony, and the pleadings, that the defendants did not depart from good and accepted medical practice in their care and treatment of Valitutto and that such treatment did not proximately cause his injuries (see Swiatocha v Koenigsdorf, 241 AD3d 1595; Autieri v Rosen, 241 AD3d 1228).

However, in opposition, the plaintiffs' expert affirmation raised triable issues of fact as to whether the defendants departed from good and accepted care and whether their alleged departures proximately caused Valitutto's injuries. Contrary to the defendants' contention, the plaintiffs' expert was qualified to offer an opinion despite not being board certified in emergency medicine. "'A physician need not be a specialist in a particular field to qualify as a medical expert and any alleged lack of knowledge . . . [or] expertise goes to the weight and not the admissibility of the testimony'" (Maestri v Pasha, 198 AD3d 632, 634, quoting Moon Ok Kwon v Martin, 19 AD3d 664, 664; see Lyons v Tsadyk, 225 AD3d 681, 683). Here, the plaintiffs' expert set forth a sufficient foundation for his or her opinion, based on his or her clinical experience and familiarity with the applicable standards of care (see Maestri v Pasha, 198 AD3d at 635; Kiernan v Arevalo-Valencia, 184 AD3d 727, 729).

Furthermore, the opinions of the plaintiffs' expert were not speculative and did not fail to address the opinions of the defendants' experts (see Chillious v Edouard, 234 AD3d 737, 741; Ivey v Mbaidjol, 202 AD3d 1070, 1072). The plaintiffs' expert opined, inter alia, that the defendants departed from the standard of care by failing to take a proper history, institute the proper treatment, examine Valitutto's reflexes, order a cervical cord CT scan in the emergency department, or order periodic neurological checks, which the expert opined would have revealed signs and symptoms of cervical cord compression.

Moreover, generally, a hospital may not be held vicariously liable for the negligence of a private attending physician chosen by the patient (see Doria v Benisch, 130 AD3d 777, 777; Schultz v Shreedhar, 66 AD3d 666, 666). "However, an exception to the rule that a hospital may not be held vicariously liable for the treatment provided by an independent physician applies where a patient comes to the emergency room seeking treatment from the hospital and not from a particular physician of the patient's choosing, or a nonemployee physician otherwise acted as an agent of the hospital or the hospital exercised control over the physician" (Vargas v Lee, 207 AD3d 684, 685 [citation and internal quotation marks omitted]; see Danziger v Mayer, 236 AD3d 755, 760). Here, the defendants failed to demonstrate, prima facie, that SIUH was free from vicarious liability for Valitutto's care and treatment in its emergency department as a matter of law (see Danziger v Mayer, 236 AD3d at 760).

The defendants' remaining contentions are without merit.

Accordingly, the Supreme Court should have denied the defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.

GENOVESI, J.P., FORD, VENTURA and QUIRK, JJ., concur.

ENTER:

Darrell M. Joseph

Clerk of the Court